UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

FILED
CLERK
9/28/2026 11:34 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

--------------------------------------------------------------------X

WALTER FREISEM,

Plaintiff,

-against-

CAROL HAMM, an individual, COSMOS GRANT, an individual, SUFFOLK COUNTY COURT EMPLOYEES ASSOCIATION, INC., JOHN DOES 1-5, in their individual capacities, and JANE ROES 1-5, in their individual capacities,

Defendants.

--------------------------------------------------------------------X

**ORDER**
25-cv-00141 (JMA) (ARL)

**AZRACK, United States District Judge:**

On January 9, 2025, Plaintiff Walter Freisem initiated this action against Defendants Carol Hamm, Cosmas Grant (incorrectly named as Cosmos Grant), John Does 1-5, Jane Roes 1-5 (together, the "State Defendants") and Defendant Suffolk County Court Employees Association, Inc. (the "SCCEA"). (ECF No. 1 ("Compl.").) The Complaint alleges: (1) that Defendants Hamm and Grant violated Plaintiff's Fifth Amendment right against self-incrimination, giving rise to a claim under 42 U.S.C. § 1983; (2) that Defendants John Does 1-5 and Jane Roes 1-5 violated Plaintiff's Fifth Amendment due process rights, giving rise to a claim under 42 U.S.C. § 1983; and (3) that the SCCEA violated their duty of fair representation to Plaintiff, giving rise to a claim under Section 301 of the Labor Management Relations Act (the "LMRA"). (Id. at 10–12.) The Complaint asserts that these violations resulted in "damages approaching $3.6 million." (Id.) The Court presumes familiarity with the facts and background of this case.

On September 15, 2025, the State Defendants filed a motion to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim. (ECF No. 26.) On September 16,

2025, the SCCEA filed a motion to dismiss the Complaint, which also asserted lack of subject matter jurisdiction and failure to state a claim. (ECF No. 27.)

In a Report and Recommendation dated August 27, 2026 (the "R&R"), Magistrate Judge Arlene R. Lindsay recommended that both motions to dismiss be granted. (ECF No. 29 ("R&R").) Plaintiff filed an objection on September 3, 2026, in which he objected to aspects of Judge Lindsay's recommendation regarding the State Defendants' motion. (ECF No. 30 ("Objection").) Plaintiff does not object to Judge Lindsay's recommendation regarding the SCCEA's motion. (See id. at 6.) The State Defendants filed a response on September 17, 2026. (ECF No. 31.) For the reasons stated below, the Court adopts the R&R's recommendation and grants both motions to dismiss.

## I. LEGAL STANDARD

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see Fed. R. Civ. P. 72(b)(3) (similar). In reviewing a magistrate judge's report and recommendation, a court must "make a de novo determination of those portions of the report or . . . recommendations to which objection[s] [are] made." 28 U.S.C. § 636(b)(1)(C) (emphasis added); see also Fed. R. Civ. P. 72(b)(3) (similar); United States ex rel. Coyne v. Amgen, Inc., 243 F. Supp. 3d 295, 297 (E.D.N.Y. 2017), aff'd, 717 F. App'x 26 (2d Cir. 2017). By contrast, those portions of a Report and Recommendation to which there is no specific reasoned objection are reviewed for clear error. See, e.g., Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008). In the absence of any objections, "the district court need only satisfy itself that there is no clear error on the face of the record." Estate of Ellington ex rel. Ellington v. Harbrew Imports Ltd., 812 F. Supp. 2d 186, 189 (E.D.N.Y. 2011) (internal citations omitted).

## II. DISCUSSION

### A. The SCCEA's Motion

The R&R recommends that Plaintiff's claim alleging that the SCCEA breached its duty of fair representation should be dismissed for lack of subject matter jurisdiction because Second Circuit law provides that "[t]he LMRA does not confer federal jurisdiction over labor disputes among states, their employees, and the unions who represent them." (R&R at 9–10 (quoting Baumgart v. Stony Brook Children's Svc., P.C., 249 F. App'x 851, 852 (2d Cir. 2007)).) The R&R also recommends that this claim should be dismissed as untimely. (R&R at 18–21.)

Plaintiff does not object to R&R's recommendation regarding his breach of the duty of fair representation claim against the SCCEA. (See Objection at 6.) This Court finds no clear error in these parts of the R&R and, accordingly, grants the SCCEA's motion to dismiss in its entirety.

### B. The State Defendants' Motion

The R&R recommends that Plaintiff's claims against the State Defendants be dismissed for several reasons.

#### 1. Sovereign Immunity

The R&R concludes that, to the extent that Plaintiff asserts claims against any of the State Defendants in their official capacity, such claims are barred by sovereign immunity. (See R&R at 8–9.) Plaintiff does not object to this conclusion, arguing only that he "did not sue the State Defendants in their official capacities, only in their individual capacities." (Objection at 2.) This Court finds no clear error in the R&R's sovereign immunity analysis and adopts that portion of the R&R.

#### 2. Fifth Amendment Privilege Against Self-Incrimination

The R&R recommends dismissal, on the merits, of Plaintiff's § 1983 claim that Defendants Hamm and Grant violated his Fifth Amendment right against self-incrimination, reasoning, inter

alia, that there are no criminal proceedings pending against him and that he was not terminated for invoking the privilege against self-incrimination. (R&R at 10–13.) Plaintiff objects and, accordingly, the Court reviews this portion of the R&R de novo.

Because the R&R recommended that Plaintiff's Fifth Amendment claim be dismissed on the merits, the R&R did not address the qualified immunity defense raised by Defendants. (See R&R at 17–18.) As explained below, the Court concludes that this claim (and Plaintiff's objections) is more easily addressed at the second stage of the qualified immunity analysis because the federal right that Plaintiff claims was violated was not clearly established.

"Qualified immunity provides government officials 'immunity from suit rather than a mere defense to liability.'" Looney v. Black, 702 F.3d 701, 705 (2d Cir. 2012) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "Qualified immunity bars a plaintiff's claim unless (1) the official violated a statutory or constitutional right, and (2) that right was clearly established at the time of the challenged conduct." Matzell v. Annucci, 64 F.4th 425, 434 (2d Cir. 2023). As the Second Circuit has explained:

> Although qualified immunity defenses are often decided on motions for summary judgment, in appropriate circumstances a district court may address qualified immunity at the pleadings stage. We have recognized, however, that a qualified immunity defense faces a formidable hurdle at the motion to dismiss stage and is usually not successful. . . . . Where a defendant presents a qualified immunity defense on a motion to dismiss . . . the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense.

Id. at 434 (cleaned up).

In determining whether qualified immunity exists, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236.

With respect to the second prong, "[c]learly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." Dist. of Columbia v. Wesby, 583 U.S. 48, 63 (2018) (internal quotations omitted). To determine whether a right is clearly established, district courts consider "Supreme Court decisions, [Second Circuit] decisions, and decisions from other circuit courts." Simon v. City of N.Y., 893 F.3d 83, 92 (2d Cir. 2018). That is not to say, however, that courts "require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Id. at 63–64 (internal quotations omitted). In other words, the clearly established right "must be defined with specificity." City of Escondido, Cal. v. Emmons, 586 U.S. 501, 503 (2019).

Plaintiff argues that his claim is governed by Garrity v. New Jersey, 385 U.S. 493 (1967). (Objection at 3.) In Garrity, the Supreme Court held that incriminating statements obtained from a public employee under threat of termination are inadmissible in subsequent criminal proceedings against that employee. See 385 U.S. at 500. Subsequent cases have held that public employees cannot be terminated solely for refusing to waive their immunity from prosecution based on statements made under threat of termination or for invoking the Fifth Amendment privilege against self-incrimination. See Gardner v. Broderick, 392 U.S. 273, 279 (1968) (finding, in case where police officer discharged solely for refusing to sign waiver of immunity sought reinstatement, that "the precise question which is presented" is "whether a State may discharge an officer for refusing to waive a right which the Constitution guarantees to him," and concluding that the officer could not be discharged "solely for his refusal to waive the immunity to which he is entitled"); Lefkowitz

v. Cunningham, 431 U.S. 801, 806 (1977) ("Public employees may constitutionally be discharged for refusing to answer potentially incriminating questions concerning their official duties if they have not been required to surrender their constitutional immunity.") (citing Gardner, 392 U.S. at 278–79); Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation of City of New York, 392 U.S. 280, 284 (1968) (holding that it was unconstitutional to fire public employees for refusing to answer questions after being warned that their statements could be used against them in a criminal proceeding); Harrison v. Wille, 132 F.3d 679, 682 (11th Cir. 1998), as amended (Apr. 1, 1998) (explaining, in Section 1983 action, that "a public employee cannot be terminated solely for the exercise of his Fifth Amendment rights").

Plaintiff assumes that Garrity and its progeny support a claim under Section 1983 where a public employee is terminated for invoking his Fifth Amendment privilege after being warned that his refusal to answer questions could result in termination, and that any statements could be used against him in a future criminal proceeding. (Objection at 3 ("Plaintiff was informed that, notwithstanding the absence of immunity, had he must [sic] incriminate himself and risk criminal prosecution or be fired. That combination fits a Garrity v. New Jersey, 385 U.S. 493 (1967) violation like a glove.").) Even assuming, for the sake of argument, that Plaintiff is correct that such a claim is clearly established for purposes of qualified immunity and viable under Section 1983, the facts of this case materially diverge from the standard fact pattern found in the Garrity line of cases. The Court concludes that it is not clearly established that the conduct alleged in the Complaint constitutes a constitutional violation.

Here, Plaintiff was not terminated for invoking the privilege against self-incrimination. Plaintiff argues that he was "constructively discharged when faced with the Hobson's choice between self-incrimination and firing, the latter of which would cause Plaintiff to forfeit nearly $3.6 million in retirement benefits." (Objection at 3.) While the Complaint alleges that Plaintiff

was warned during the questioning that took place on February 1, 2022 that he could be terminated for invoking the privilege against self-incrimination, (Compl. ¶¶ 18, 21), Plaintiff was not immediately fired after this interview. In fact, Plaintiff was never fired. Instead, on April 11, 2022—over two months after his interview—Plaintiff received notice "that Plaintiff's vaccination certificate was fraudulent, and that Plaintiff had 14 days to obtain a valid vaccination card or be terminated for cause."[1] (Compl. ¶ 30.) Then, on April 22, 2022, Plaintiff chose to resign rather than comply with his employer's requirement that he upload a valid vaccination card. (Compl. ¶ 35.) In choosing to resign, he avoided termination for cause in order to preserve his entitlement to nearly $3.6 million in retirement benefits. (Compl. ¶¶ 34, 35.)

Plaintiff has not cited, and this Court has not found, any cases approving of Plaintiff's constructive discharge theory in the context of Garrity claims. It is not clearly established federal law that the Fifth Amendment right Plaintiff invokes encompasses constructive discharge claims, particularly based on the record here. As noted supra, Plaintiff has not alleged that Defendants (or anyone at his employer) issued the April 11, 2022 notice because of his invocation and silence under questioning. And, as Plaintiff acknowledges in his objection, "no criminal prosecution was ever initiated" against him. (Objection at 3.) It is not clearly established that a mere threat to discipline a public employee for his silence—coupled with an unactualized warning that any statements he made could be used at a criminal trial—violates the Fifth Amendment when the employer never actually disciplined the employee on the basis of the invocation.

---

[1] While the Complaint alleges that "the vaccination card [Plaintiff] had previously uploaded had been arbitrarily and capriciously pronounced invalid without a hearing," (Compl. ¶ 30), Plaintiff never alleges that this notice was issued because Plaintiff invoked his Fifth Amendment rights during the interviews with the Inspector General. This is another fatal flaw in Plaintiff's pleading. Under Plaintiff's proffered theory, a public employee's termination violates the Fifth Amendment when the employee is terminated solely because of his invocation of his Fifth Amendment right to remain silent. Here, however, Plaintiff does not allege that the notice about the vaccine card—which he claims precipitated his resignation—was issued because of his invocation. Relatedly, the Complaint includes no facts indicating that the vaccination card was actually valid or that, absent the purported coercion at issue, Plaintiff would have provided a colorable exculpatory explanation for the vaccination card he submitted.

Accordingly, having reviewed the law and facts de novo, the Court dismisses Plaintiff's claim based on the Fifth Amendment privilege against self-incrimination on the basis of qualified immunity.[2]

**3. Due Process**

Plaintiff alleges that John Doe and Jane Roe Defendants violated his right to due process "by ordaining that Plaintiff would be fired for cause without a hearing . . . absent a new COVID vaccination certificate by April 25, 2022, which Defendants knew or should have foreseen would precipitate Plaintiff's coerced resignation." (Compl. ¶ 42.) The R&R recommends dismissal of this claim, reasoning that Plaintiff had the opportunity to challenge the voluntariness of his resignation in an Article 78 proceeding in state court and that this post-deprivation remedy satisfies due process under Giglio v. Dunn, 732 F.2d 1133 (2d Cir. 1984). (R&R at 14–16.) Plaintiff objects and, accordingly, the Court reviews this portion of the R&R de novo.

In Giglio, the Second Circuit considered a public school teacher's claim that his resignation was coerced when officials from his school district told him that his position would be abolished unless he returned from disability leave within three days or agreed to resign. 732 F.2d at 1134. Giglio resigned within a few hours. Id. The court rejected Giglio's due process claim, concluding that a pre-deprivation hearing was not required in his case because "Article 78 gave the employee a meaningful opportunity to challenge the voluntariness of his resignation[.]" Id. at 1135. The court reasoned that "[a] coerced resignation does not involve a showing of cause; it is simply the submission by an employee to pressure exerted by a superior" and that, in such cases, "the only possible dispute is whether the resignation was voluntary or involuntary, and this cannot be determined in advance." Id. Thus, Giglio held that, "[w]here a pre-deprivation hearing is

[2] Because the Court dismisses Plaintiff's Fifth Amendment claim on qualified immunity grounds, it need not reach the issue of whether Plaintiff sufficiently alleged Defendant Hamm's personal involvement. (See R&R at 16–17; Objection at 5.)

impractical and a post-deprivation hearing is meaningful, the State satisfies its constitutional obligations by providing the latter." Id.

Plaintiff objects that, under Giglio, a post-deprivation proceeding is adequate only when a pre-deprivation hearing would have been "impractical" and that, in his case, Defendants demonstrated that a pre-deprivation hearing was practical by scheduling and cancelling a hearing on March 17, 2022 that was intended "to determine whether Plaintiff had submitted a fraudulent COVID vaccination card." (Objection at 4 (citing Giglio, 732 F.2d 1133 (2d Cir. 1984)).) He claims, in his objection, that Defendants cancelled that hearing because they had no evidence that his vaccine card was fraudulent and that, when Defendants subsequently ordered Plaintiff to obtain a valid vaccination card or face termination, they "declared Plaintiff guilty without a hearing or trial . . . , taking a page from the Queen of Hearts in *Alice in Wonderland*: 'Sentence first—verdict afterwards.'" (Id.)

This argument fails for multiple reasons. First, the Complaint makes no mention of this March 17, 2022 hearing that was purportedly scheduled and then cancelled. Nor did Plaintiff raise this hearing in his opposition to the motion to dismiss. (See ECF No. 26-2.) Accordingly, the Court is under no obligation to consider this argument, raised for the first time in Plaintiff's objection to the R&R. Moreover, Plaintiff's argument elides the fact that Plaintiff received ample pre-deprivation notice of the allegation that his vaccine card was deficient and was provided with the opportunity to be heard regarding that allegation. The Complaint alleges that, on January 31, 2022, Plaintiff received a memo that "alleg[ed] his unfitness for office for failing to comply with the vaccination policy of the New York State Court System" and "declared [his] vaccination card deficient." (Compl. ¶ 16.) On February 1, 2022, Plaintiff appeared for questioning before the Inspector General and was advised "that he was under investigation for misconduct that could result in both a criminal prosecution and disciplinary proceedings from the Office of Court

Administration and ultimate termination for cause." (Compl. ¶ 20.) At that meeting, he was asked questions about his uploaded vaccination card but refused to answer them. (Compl. ¶ 22.) Days later, that questioning continued and Plaintiff again invoked his Fifth Amendment privilege. (Compl. ¶ 27.) On March 11, 2022, Plaintiff received a letter formally charging him with uploading a falsified vaccine card. (Compl. ¶ 29.) On April 11, 2022, Plaintiff received a notice "that Plaintiff had 14 days to obtain a valid vaccination card or be terminated for cause." (Compl. ¶ 30.) On April 22, 2022, Plaintiff made the decision to resign. (Compl. ¶ 35.)

Against this backdrop, Plaintiff can hardly argue that he was not provided with notice and opportunity to be heard on the issue of whether his vaccine card was falsified. Thus, as in Giglio, "the only possible dispute is whether the resignation was voluntary or involuntary, and this cannot be determined in advance." 732 F.2d at 1135. "Where, as here, Article 78 gave the employee a meaningful opportunity to challenge the voluntariness of his resignation, he was not deprived of due process simply because he failed to avail himself of the opportunity." Id. Plaintiff's procedural due process claim fails. See Broecker v. New York City Dep't of Educ., No. 23-655, 2023 WL 8888588 (2d Cir. Dec. 26, 2023) (affirming district court's decision that public school teachers who were terminated for non-compliance with New York's vaccination mandate had no due process claim where they received notice of the vaccine mandate, the process for seeking religious and medical exemptions, and consequences of non-compliance, along with the opportunity to seek relief through an Article 78 proceeding); Locurto v. Safir, 264 F.3d 154, 171 (2d Cir. 2001) ("When [a tenured] public employee is terminated, procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards."); Rivera-Powell v. New York City Bd. of Elections, 470 F.3d 458, 467 (2d Cir. 2006) (concluding that due process was satisfied where plaintiff "received at least some form of pre-deprivation hearing" and "had the

opportunity to obtain full judicial review" in a post-deprivation proceeding under New York Election Law section 16–102).

Accordingly, having reviewed the law and facts de novo, the Court dismisses Plaintiff's procedural due process claim.[3]

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS both motions to dismiss and dismisses Plaintiff's claims with prejudice.

Plaintiff's objection requests, in conclusory fashion, leave to amend to add unspecified factual allegations. Plaintiff, however, never requested such in his original opposition brief and has failed to show how he would amend the Complaint to cure its defects. The Court denies Plaintiff's request for leave to amend.

The Clerk of the Court is respectfully directed to enter judgment accordingly and to close this case.

**SO ORDERED.**

Dated: September 28, 2026
Central Islip, New York

/s/ JMA
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE

[3] The R&R rejects any substantive due process claim Plaintiff may seek to assert on the grounds that such a claim would arise out of the same facts as his procedural due process claim. (R&R at 14 n.3.) Plaintiff does not object to this aspect of the R&R and, finding no clear error, the Court adopts that recommendation.